## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| EUSTAQUIA V. LAZARTE, | * |
| **Plaintiff,** | * |
|  | * |
| v. | * |
| | *     **Case No.: DLB-20-1515** |
| MONTGOMERY COUNTY PUBLIC SCHOOLS, | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Eustaquia V. Lazarte, a former employee of the Board of Education of Montgomery County, filed this employment discrimination suit against "Montgomery County Public Schools" ("MCPS") and alleged disparate treatment, a hostile work environment, and retaliation. ECF 1. Proceeding *pro se*, Ms. Lazarte alleges violations of Title VII of the Civil Rights Act ("Title VII"), the Maryland Fair Employment Practices Act ("MFEPA"), the Age Discrimination Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Pending is defendant's motion to dismiss the complaint. ECF 15.

The procedural history predating the filing of defendant's motion is relevant to the ultimate disposition. On November 30, 2020, MCPS filed with the Court a letter in which it sought leave to file a motion to dismiss Ms. Lazarte's complaint and identified both the deficiencies in the complaint and the grounds on which it would seek dismissal. ECF 8. In response to the letter, the Court entered an Order stating: "Plaintiff shall have an opportunity to respond to the deficiencies noted by Defendant in its letter, by filing an amended complaint on or before January 8, 2021." ECF 9. Plaintiff did not file an amended complaint by January 8, 2021. Instead, on January 7, she

filed a letter in which she requested more time to retain counsel and file an amended complaint. ECF 12.  On January 11, 2021, the Court granted plaintiff an additional 30 days to file her amended complaint and directed her to file it by February 12, 2021.  ECF 13.  Plaintiff did not file an amended complaint by that date.  Instead, she filed a letter in which she clarified her claims.  ECF 14.

On March 4, 2021, defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  ECF 15.  The grounds on which defendant seeks dismissal are the same as those identified in its November 30, 2020 letter in which it sought leave to file the motion.  ECF 8 & 15.  On March 9, 2021, the Court sent plaintiff a letter notifying her that defendant filed a motion to dismiss, that she must respond to the motion, and that if the motion is granted, it could result in the dismissal of her case.  ECF 16.  On April 5, 2021, plaintiff, still unrepresented, filed a one-page opposition.  ECF 17.  The matter is ripe for disposition.  I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021).  The motion to dismiss is granted.

I.      Factual Allegations

In deciding the pending motion to dismiss, the Court accepts the following allegations in plaintiff's complaint as true.  Plaintiff was a building services employee for Montgomery County Public Schools.  She alleges her employer discriminated against her based on her race, national origin, age, gender, and disability.  ECF 1, at 5.  She did not identify a disability in her complaint, *see id.*, and after filing the complaint, she informed the Court that she is not pursuing a disability discrimination claim.  ECF 14. [1]   She alleges defendant discriminated against her by terminating

---

[1]   In her February 11, 2021 letter filed with the Court, plaintiff stated she is "not asking for a disability lawsuit."  ECF 14.  The Court interprets this statement as an intent to abandon her claim. To the extent the complaint alleged disability discrimination under the ADA or the Rehabilitation Act, those claims are dismissed because plaintiff has abandoned them.

her, subjecting her to unequal terms and conditions of employment, retaliating against her, and carrying on a hostile work environment.  ECF 1, at 5.  She seeks "reinstatement, back pay, front pay, compensatory damages[,] and any other relief the law may provide for."  *Id.* at 7.

Plaintiff identifies her race and national origin as "Hispanic."  *Id.* at 5.  She names Donald Hoes, the building service manager, as a supervisor responsible for the alleged discrimination.  ECF 1-1, at 1.  She alleges that "[t]here were many times where [she] was discriminated against by Donald Hoes for being Hispanic, as well as using [her] Spanish[-]speaking skills to benefit the school and [her] work."  *Id.*  She alleges that, on one occasion, she "was working at school with another co-worker that was Hispanic" and that she "was a translator for her [the coworker] from Spanish to [E]nglish since her [the coworker's] [E]nglish was not good."  *Id.*  She alleges Hoes told her "not to help [the coworker] or translate for her."  *Id.*  Plaintiff also alleges the school would sometimes use her to translate for Spanish-speaking parents.  *Id.*  She alleges Hoes did "not like it when [she] went in to help, and told [her] that [she was] 'wasting time.'"  *Id.*  She alleges that subsequently "a new Hispanic employee was also hired" and that "Donald Hoes prohibited [them] from speaking Spanish because he thought [they] were speaking about him."  *Id.*

Plaintiff also alleges she was discriminated against based on her female gender and age, which is 59 years old.  ECF 1, at 5.  Many of the allegations relating to plaintiff's age also relate to her gender.  For example, plaintiff claims Hoes told her "since [she] was a woman, that [she] was weak, old, and that [she] cannot carry heavy weight."  ECF 1-1, at 1.  She alleges "Donald Hoes also judged the way [she] dressed, and told [her] that [she] should dye [her] hair."  *Id.*  She alleges he "also told [her] that [she] was an old woman and that [she] was the oldest person in the school."  *Id.*  She alleges Hoes "forced a [coworker] to retire from school because he was too old

to work in building service." *Id.*  Plaintiff further alleges that, after this, Hoes "pushed [her] and provoked [her] by continuingly asking [her] when [she] was going to leave the school." *Id.*

Plaintiff alleges that Hoes "was a violent person that yelled at [her] countless times." *Id.* She also alleges that, when she and Hoes cleaned the classrooms during the summer, "[h]e would tell [her] that [she] was sick and mental many times." *Id.* at 3.  She also alleges that, "[o]n November 15, 2016[,] . . . Donald Hoes and [she] were taking a wide[,] bulky[,] heavy table to the media center for a meeting later that day." *Id.* at 4.  "While [they] were taking it, it dropped, almost hitting [her] foot." *Id.*  "Donald Hoes then told [her] that '[she] [was] weak, and to carry it [herself].'" *Id.*  She also alleges Hoes "told [her coworker] . . . to take pictures of [her] while [she] would work." *Id.* at 3.

Plaintiff says she was punished for taking a one-week vacation during Christmas break in December 2016 that she had asked for in advance. *Id.* at 1.  She alleges Hoes subsequently asked her to work that week but that she could not because she had already planned for her vacation. *Id.* Later, "Donald Hoes was waiting for [her] with Mrs. Bolden, [the principal,] and informed Mrs. Bolden that area supervisor Rosa Pineda came earlier that day and found spots and marks on the walls and on the floor in [her] section of work." *Id.* at 1–2.  "Donald Hoes told the principal that he told [her] to clean that section and that [she] didn't do it." *Id.* at 2.  She alleges she was never told to clean the spots and marks. *Id.*  She further alleges "[she] went to Rosa Pineda's office on [her] own time and asked her about the visit." *Id.*  Pineda told plaintiff "she did not go to school on those dates." *Id.*  Plaintiff argues this proves Hoes lied about Pineda's visit. *Id.*  The principal "[t]hen asked Donald Hoes to show her the letter that [Ms. Pineda] had written when she supposedly came to check the school." *Id.*  Plaintiff alleges the letter that was produced was forged. *Id.*

Plaintiff alleges that, in January 2017, she was placed on a Performance Improvement Plan ("PIP") by the principal Mrs. Bolden and Hoes.  ECF 1-1, at 1.  She was offered "[three] choices, a 90[-]day program where [she] would be evaluated by the manager and the assistant manager, the PAR [Peer Assistance and Review] Program where MCPS would send employees and evaluate [her] work performance.  The [third] option was to resign." *Id.*  Plaintiff "chose the PAR program." *Id.*  While in the PAR program, plaintiff alleges she was evaluated by Mr. Harper, the Professional Growth Consultant ("PGC"), for the first four months and then by Ms. Butt-Pruitt, another PGC, for the final two months.  *Id.* at 2.  Plaintiff alleges she was told she would be evaluated by Harper "from the start of [her] work shift until the end[,]" but he "only came to see [her] work twice, [one] time for 30 minutes while [she] was cleaning the classrooms" and the second "time was for [one] hour and 45 minutes." *Id.*  She alleges she was told she would receive training during the program but that no training was offered at any point.  *Id.*  "When [she] asked Mr. Harper about the professional training [she] was supposed to receive, he told [her] that [she] did not require training because he noticed that [she] did not need it because [she] knew how to do [her] work." *Id.*  After Butt-Pruitt became the PGC evaluating plaintiff's work, plaintiff states Hoes told Butt-Pruitt that "he was not happy with [plaintiff's] job performance." *Id.*  She asked Butt-Pruitt about the training she was supposed to receive but was told "that they did not have one and that [she] did not need one." *Id.*

Plaintiff states that Hoes changed her work schedule several times, including a reduction in her lunch period from 45 to 35 minutes.  *Id.* at 2–3.  She alleges that "[o]ther [coworkers] had a more flexible lunch break compared to [hers], which [Donald Hoes] selected for [her] himself." *Id.* at 3.  She alleges she was required to take lunch at 3:30 in the afternoon and her 15-minute

break at 6:30 in the evening.  *Id.*  She claims that other employees got flex hours and that shifting

the schedules resulted in extra work for her.  *Id.*

Plaintiff also alleges she was asked to do an unrealistic amount of work.  She claims she

was assigned a section to clean that previously was cleaned "by [two] workers, and took a total of

[eight] hours" and that she alone was required to finish it in only three hours.  *Id.* at 3.  She also

alleges she was required to do more "detail work," as opposed to "regular cleaning," which other

employees were required to do.  *Id.*

Plaintiff alleges she repeatedly complained to her supervisors about Hoes's abusive

conduct.  She claims she informed Butt-Pruitt about the yelling but that she "was told by her that

[she] should get used to it [or] otherwise ignore him."  *Id.*  She also claims she told Harper "about

Donald Hoes' mistreatment, [but] he did not believe it."  *Id.* at 2.  She alleges she told the school

principal Bolden about Hoes' conduct, but she did not believe her and "at one point of time . . .

Mrs. Bolden said she did not want to see [her] anymore at her office."  *Id.*

 Plaintiff alleges she was terminated from her position due to discrimination.  *See* ECF 1,

at 5.

II.     Analysis

Federal Rule of Civil Procedure 8 provides that a well-pleaded complaint must contain "a

short and plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of the claims pled in a

complaint."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting

*ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019)); *see* Fed. R.

Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the "complaint need only 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Ray v. Roane*, 948 F.3d

222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).   A complaint must contain "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).   A plaintiff's "allegations must be sufficient 'to raise a right to relief above the speculative level,' including sufficient facts to state a claim that is 'plausible on its face.'"   *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. 544, 555, 570 (2007)).   When resolving a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all well-pleaded allegations and draw all reasonable factual inferences in [the] plaintiff's favor."   *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).   The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."   *Ray*, 948 F.3d at 226 (quoting *Tobey*, 706 F.3d at 387 (quoting *Twombly*, 550 U.S. at 555)).

At the pleading stage in an employment discrimination lawsuit, a plaintiff is not required "to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss."   *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015); *see Swierkiewicz v. Sorema*, 534 U.S. 506, 510–11 (2002)).   Still, the Court must consider the elements of a discrimination claim to discern whether plaintiff has stated a facially plausible claim. *Iqbal*, 556 U.S. at 678; *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

"Federal courts are obliged to liberally construe filings by pro se litigants."   *United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019) (citing *Haines v. Kerner*, 404 U.S. 519, 510 (1972)). "[A] complaint, especially a pro se complaint, should not be dismissed summarily unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (quoting *Haines*, 404 U.S. at 521) (internal quotation marks omitted).  Nevertheless, all plaintiffs, whether represented or not, are required "to demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### A.  Named Defendant

Plaintiff filed suit against MCPS.  ECF 1.  Defendant moves to dismiss on the grounds that MCPS is not the proper defendant.  ECF 15, at 7 (citing Md. Code Ann., Educ. §§ 3-104(a), (b)(2); *Miller v. Montgomery Cnty. Pub. Schs.*, No. TJS-19-3067, 2020 WL 2097686, at *1 (D. Md. May 1, 2020)).  When defendant filed a letter in which it requested to file a motion to dismiss, plaintiff was put on notice that MCPS was an improper defendant and that the Board of Education for Montgomery County is the proper defendant.  *See* ECF 8, at 2.  Rather than amend her complaint, plaintiff insisted that MCPS was the proper defendant because MCPS was named in her EEOC complaint and because she was not a teacher but rather a building services employee.  ECF 17.

Even though MCPS was named in plaintiff's EEOC complaint and plaintiff is not a teacher, the Board of Education for Montgomery County, not MCPS, is the correct legal entity that can be sued in this case.  *See* Md. Code Ann., Educ. § 3-104(b)(2) (identifying "county board of education" for each county as the corporate body that "[m]ay sue and be sued"); *James v. Frederick Cnty. Pub. Schs.*, 441 F. Supp. 2d 755, 758 (D. Md. Aug. 1, 2006) (holding that Frederick County Public Schools was not a separate legal entity and that the Board of Education should have been named instead but declining to dismiss the case in its entirety on that basis and granting the plaintiff leave to amend to name the proper defendant).  Nonetheless, the Court will not dismiss a complaint prosecuted by a *pro se* plaintiff with no apparent legal training on the grounds that she has

improperly named MCPS as a defendant.  *See, e.g.*, *Pugh v. E.E.O.C.*, No. DKC-13-2862, 2014 WL 2964415, at *2 (D. Md. June 30, 2014) ("There is no legal authority authorizing MCPS to sue or be sued in its own name. . . .  Dismissing a complaint because of a pleading technicality is inappropriate, especially here, where plaintiff is *pro se* and courts are instructed to analyze claims under a liberal review.").  Such a dismissal would be particularly inappropriate where the state courts charged with interpreting the Maryland Education Code have heard suits against MCPS and written that "[t]he legal name for Montgomery County Public Schools is 'the Board of Education of Montgomery County.'"  *Montgomery Cnty. Pub. Schs. v. Donlon*, 168 A.3d 1012, 1015 n.3 (Md. Ct. Spec. App. 2017), *aff'd*, 188 A.3d 949 (citing Md. Code Ann., Educ. § 3-104 (1978, 2014 Repl. Vol.)).  For purposes of this motion to dismiss, plaintiff's complaint will be treated as if she had named the Board of Education for Montgomery County as the defendant.

    B.  Disparate Treatment under Title VII & the MFEPA

Plaintiff asserts employment discrimination claims under Title VII and the MFEPA. Pursuant to Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A prima facie case of disparate treatment under Title VII consists of four elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) [an] adverse employment action; and (4) that the adverse employment action taken was taken under circumstances giving rise to an inference of unlawful discrimination."  *Payne v. Brennan*, No. PX-16-1095, 2017 WL 952677, at *3 (D. Md.

Mar. 10, 2017) (citing *Coleman*, 626 F.3d at 190) (internal citations omitted). [2]  The fourth element may be satisfied with direct or circumstantial evidence of discrimination.  *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting forth the burden-shifting framework for proving discrimination by circumstantial means).

Defendant does not dispute that plaintiff, a Hispanic woman, is a member of a protected class.  Plaintiff alleges she was discriminated against based on her race, sex, and national origin.  When she identified her national origin in her complaint, plaintiff wrote "Hispanic."  "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."  *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).  Plaintiff did not allege that she was born in another country or that her ancestors hail from another country.  Because plaintiff has not sufficiently alleged national origin discrimination, the Court will analyze her claim as a race and sex discrimination claim and dismiss her national origin discrimination claim.

Defendant argues plaintiff failed to allege satisfactory job performance.  ECF 15-1, at 13.  Defendant claims plaintiff's admission that she was put into the PAR program establishes that she was, in fact, not performing satisfactorily.  *Id.*  Plaintiff disputes that she was placed on a PIP because of poor work performance and that she was not performing satisfactorily.  *See* ECF 14 (stating she "was placed on the PIP because of retaliation against [her] from the Building Services

---

[2] Disparate treatment claims under the MFEPA "are assessed under the Title VII framework." *Foster v. Summer Vill. Cmty. Ass'n*, No. PX-19-1199, 2021 WL 615136, at *4 (D. Md. Feb. 17, 2021) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)); *see Evans v. Md. Nat'l Capital Parks & Plan. Comm'n*, No. TDC-19-2651, 2020 WL 6703718, at *8 (D. Md. Nov. 13, 2020) ("Title VII standards also apply to employment discrimination claims under the MFEPA.").

Manager Donald Hoes"); ECF 1-1, at 1–2 (alleging she was reprimanded for her performance and placed on a PIP (the PAR program) shortly after refusing to work during a week in which she had pre-approved leave).  In her complaint, plaintiff alleges that while she was in the PAR program, she was told on more than one occasion by a supervisor that her work product was fine and that she did not need more training.  ECF 1-1, at 2.  Thus, plaintiff has sufficiently alleged she was performing her job satisfactorily.

Defendant also argues plaintiff has failed to adequately allege she faced an adverse action. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment."  *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (alteration and internal quotation marks omitted).  Ultimate employment actions such as "discharge, demotion, decrease in pay or benefits, loss of job, title or supervisory responsibility, or reduced opportunities for promotion" are typically required to show an adverse action.  *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999) (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en banc)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2008).  Plaintiff alleges she was terminated.  Termination qualifies as an adverse action.  *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (noting the plaintiff's termination "indisputably constituted adverse employment action"). [3]

---

[3] Plaintiff alleged certain other potential adverse actions, but none rises to the level of an adverse action contemplated by Title VII.  She alleges she was placed in the PAR program, but "reprimands and poor performance evaluations alone 'are much less likely to involve adverse employment actions than the transfers, discharges, or failures to promote whose impact is on the terms and conditions of employment and is immediate and apparent.'"  *Melendez v. Bd. of Educ. of Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017) (quoting *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015)).  Plaintiff has made no allegation that her placement into the PAR program resulted in an immediate and detrimental impact on the terms and conditions of her employment.  Therefore, the placement into the PAR program, without more, cannot constitute an adverse action.  Plaintiff likewise argues the schedule changes she faced resulted in an increased workload, but "[t]he Fourth Circuit . . . has not explicitly acknowledged that an

Finally, defendant argues plaintiff has not alleged the final element of a Title VII claim—

that an adverse employment action was taken under circumstances giving rise to an inference of

unlawful discrimination.  The Court agrees.  To survive a motion to dismiss, the plaintiff must

"plausibly state a claim that [she] was terminated *because* of [her protected traits]."  *Bing v. Brivo*

*Sys.*, *LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (emphasis added).  Here, plaintiff has not alleged any

details about her termination.  She does not state when she was terminated.  One might infer that

plaintiff was terminated in November 2017, the month she claims the discrimination ended.  But

even if the Court makes that inference, the allegations in her complaint span a 21-month period

from February 2016 to November 2017.  During that period, she describes incidents involving

arguably discriminatory conduct, but she does not state when they occurred in relation to her

termination.  She alleges discriminatory conduct by Hoes and his involvement in placing her in

the PAR program, but her participation in the PAR program concluded in Summer 2017, months

before her termination.  She does not allege who made the decision to terminate her or told her she

was terminated.  Nor does she describe the circumstances under which she was terminated, the

reasons she was given for the termination, or why she believes she was terminated because of a

protected trait.  She has not, therefore, alleged facts that would plausibly establish a causal

connection between the alleged discriminatory conduct and her termination.  To the extent plaintiff

employer's assignment of disparate workloads, standing alone, is an adverse employment action."
*Tabb v. Bd. of Educ. of Durham Pub. Schs.*, No. 1:17CV730, 2019 WL 688655, at *6 (M.D.N.C.
Feb. 19, 2019) (citing *Boone*, 178 F.3d at 257 (stating that "modest stress not present in the old
position" is not sufficient to bring a Title VII discrimination claim)).  The schedule changes
themselves, moreover, do not alone constitute an adverse action.  *See, e.g.*, *Parsons v. Wynne*, 221
F. App'x 197, 198 (4th Cir. 2007) (noting that an employee's removal from an alternate work
schedule did not constitute an adverse action); *see also Thorn v. Sebelius*, 766 F. Supp. 2d 585,
591, 603 (D. Md. Feb. 1, 2011) (noting a return to an ordinary work schedule did not constitute an
adverse action even where the plaintiff alleged other employees were permitted to work flex
schedules).

seeks to prove her case through the *McDonnell Douglas* framework, she has identified no comparator who was treated more favorably.  *See Coleman*, 626 F.3d at 190; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.").  Plaintiff's claims under Title VII and the MFEPA are therefore dismissed for failure to adequately allege a causal connection between her termination and her protected status.[4]

C.  ADEA

Plaintiff claims her employer discriminated against her because of her age in violation of the ADEA.

> The substantive elements of the claim . . . are (a) that an employee covered by the Act (b) has suffered an unfavorable employment action by an employer covered by the Act (c) under circumstances in which the employee's "age was a determining factor" in the action in the sense that "'but for' his employer's motive to discriminate against him because of his age, he would not (have suffered the action)."

*Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir. 1982) (quoting *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1112 (4th Cir. 1981)).  The third element may be established either "under ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue" or "under a judicially created proof scheme originally used in" *McDonnell Douglas*.  *Id.* at 375 (citing *Lovelace*, 681 F.2d at 239 (adapting the *McDonnell Douglas* framework for ADEA cases)).  To the extent plaintiff seeks to prove her case through the *McDonnell Douglas* framework, she must plausibly allege discriminatory circumstances by indicating that she was replaced by someone younger than she.  *Laber*, 428 F.3d at 430 (listing the

---

[4] Defendant argues plaintiff's MFEPA claim is time-barred under the statute's two-year limitations period.  *See* ECF 15-1, at 9–11; *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 660 (4th Cir. 2018).  Because plaintiff has failed to state a claim under the MFEPA, the Court need not decide whether the suit is time-barred.

elements of the prima facie case of age discrimination under the ADEA when utilizing the *McDonnell Douglas* burden-shifting framework); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) (clarifying that the replacement contemplated by the fourth element need be younger than the plaintiff but not necessarily outside the class protected by the ADEA).

Plaintiff has alleged sufficiently the first two elements of an ADEA claim.  Her age, 59, qualifies her as an employee covered under the ADEA.  29 U.S.C. § 623(a)(1).  As to the second element—an unfavorable employment action—plaintiff alleges she was terminated.

The third element—a but-for causal connection between plaintiff's age and the termination—is where plaintiff's complaint falls short.  The only age-related allegations in the complaint are that Hoes told her many times that she was weak and old and that she was the oldest person in the school.  She also alleges that Hoes forced a co-worker to retire because he was too old to work in building services and that Hoes subsequently "pushed" her and "provoked" her "by continuingly asking [her] when [she] was going to leave the school."  ECF 1-1, at 1.  She does not allege, however, that her age was a determining factor in the decision to terminate her or that she was terminated because of her age.  Nor does she allege that Hoes was involved in the decision to terminate her.  Thus, even when plaintiff's allegations are accepted as true and viewed in the light most favorable to her, the complaint does not allege the necessary but-for causation requirement in the ADEA.  She has not plausibly pled that, were not for her employer's motive to discriminate against her based on her age, she would not have been terminated.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.").  Plaintiff also did not allege she was replaced by a younger person.  Accordingly, she has failed to plead a plausible ADEA claim.  The claim is dismissed.

D.  Hostile Work Environment

Plaintiff claims she was subjected to a hostile work environment.  Although she does not specify whether her hostile work environment claim is based on sex or race discrimination under Title VII or based on age discrimination under the ADEA, the analysis under both statutes is nearly identical and any differences between them are immaterial here.  *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (listing the same elements for claims based on race and age).  To state a claim for hostile work environment under Title VII or the ADEA, a plaintiff must allege: "(1) [s]he experienced unwelcome harassment; (2) the harassment was based on [her protected trait]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019) (Title VII); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (ADEA).  The third element, "[t]he severe or pervasive element[,] has both a subjective and objective component."  *Perkins*, 936 F.3d at 208. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  When deciding the objective component of a hostile work environment claim, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  "[R]ude treatment by [coworkers],

callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor . . . are not actionable under Title VII." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (internal quotation marks and citations omitted).

Plaintiff alleges several examples of unwelcome conduct, but she does not specify which conduct supports her hostile work environment claim. Nonetheless, consistent with the Court's duty to construe *pro se* pleadings liberally, the Court will consider any conduct that might reasonably be inferred as supportive of her claim.

Plaintiff alleges generally that Hoes is "a very violent person who yelled at her countless times" and that Hoes told her that she was "sick and mental many times" during summer classroom cleaning sessions. She alleges Hoes changed her work schedule and shortened her lunch break and was more flexible with other employees' schedules. She also claims she had to work harder than other employees. On one occasion, Hoes told a co-worker to take pictures of her while she worked. On another occasion, Hoes and she were carrying a bulky table, and it dropped, almost hitting her foot. He told her she was weak and to carry it alone. While some of these allegations are quite disturbing, plaintiff does not allege they occurred because she was a woman, Hispanic, or over 50. *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007) (stating that a plaintiff must establish that, but for the protected trait, she would not have been subjected to the harassment (quoting *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)).

She does, however, connect other harassing or discriminatory conduct to a protected trait. With respect to her race, she alleges "there were many times where [she] was discriminated against for being Hispanic, as well as using [her] Spanish[-]speaking skills to benefit the school and [her] work." As examples, she alleges Hoes told her on one occasion not to translate for a Spanish-speaking co-worker whose English was not very good. She also alleges Hoes "did not like it"

when she was asked by school administrators to translate for Spanish-speaking parents and told her she was "wasting her time."  Finally, she alleges that "much later" Hoes prohibited her from speaking Spanish to a new Spanish-speaking employee because Hoes thought they were talking about him.  With respect to age and gender, plaintiff alleges Hoes commented "many times" on her age, her dress, her strength, and her capabilities.  She said he told her she should dye her hair and called her weak and an old woman.  He encouraged her to retire.

Accepting these allegations as true, the Court finds that plaintiff has not sufficiently alleged a hostile work environment claim.  While plaintiff has plausibly pled her own subjective perception that the environment was hostile, she has insufficiently pled the objective hostility of the environment required in a workplace harassment claim.  Plaintiff has identified isolated instances of inappropriate, insensitive, or rude comments about her race, age, and gender made by her supervisor between February 2016 and November 2017.  She claims these comments happened "many times," but she provides examples of only a few incidents that occurred on unspecified dates during the 21-month period alleged in the complaint.  Although a plaintiff may state a claim based on comments alone without allegations of physically threatening conduct, as plaintiff attempts to do, the comments alleged here do not rise to the level of severity that the Fourth Circuit and this Court have considered actionable.  *See, e.g.*, *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 304 (4th Cir.) (alleged harassment was sufficiently severe or pervasive to state a claim where it "was continuous, preoccupying not only Parker, but also management and the employees at the [workplace] for the entire time of Parker's employment after her final promotion," was humiliating, interfered with the plaintiff's work, and, although not necessary to state a claim, it "also had physically threatening aspects"), *cert. denied*, 140 S. Ct. 115 (2019); *Winston v. Maryland*, No. PWG-17-2477, 2018 WL 5786130, at *7 (D. Md. Nov. 5, 2018) (concluding

allegations of defendant "publicly berating [plaintiff] seven times over the course of a year and falsely criticizing her performance in an evaluation that ultimately led to the termination of her employment—especially when considered cumulatively with the other actions, including habitual blame, and with the effects of these actions on Plaintiff [causing her to seek medical treatment and receive medication for depression]—describe[d] hostility that [was] sufficiently severe and pervasive to be both subjectively and objectively hostile and to clear the bar at this early point in the litigation [on a motion to dismiss]").  Additionally, plaintiff has not alleged that the comments unreasonably interfered with her work performance.  Rather, after she was placed on the PAR program and told she would receive training, she was told she was doing a good enough job that she did not need training.  She apparently completed the PAR program in the summer of 2017 and was terminated in November 2017, but she cites no specific discriminatory conduct by her supervisor in the months preceding her termination.  Thus, even when her well-pled allegations are accepted as true and considered in the light most favorable to her, the Court finds plaintiff has not sufficiently pled that her supervisor's discriminatory conduct based on her race, sex, and gender was sufficiently severe or pervasive to alter the terms and conditions of her employment.[5] Because plaintiff has failed to plead a plausible hostile work environment claim, the claim is dismissed.

E.  Retaliation

Plaintiff claims her employer retaliated against her after she complained of discrimination. "Title VII prohibits an employer from retaliating against an employee for complaining about prior

---

[5] To give Ms. Lazarte, a *pro se* plaintiff, the benefit of the doubt, the Court has considered all alleged discriminatory conduct combined, even if plaintiff connected it only to a certain protected trait.  *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 336–37 (4th Cir. 2010) (recognizing "that a hostile work environment claim can be bolstered by relying on evidence of a workplace tainted by both sex and racial discrimination").

discrimination." *Roberts v. Glenn Ind. Grp.*, 998 F.3d 111, 122 (4th Cir. 2021) (citing *Foster v. Univ. of Md. – E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015)).  "To make out a prima facie case of retaliation, [a plaintiff] must show (1) that [s]he engaged in protected activity; (2) that [her] employer took an adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King*, 328 F.3d at 150–51 (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)); *see Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc) (identifying the same elements for a retaliation claim under the ADEA).  Unlike with claims of discrimination, adverse actions underlying a retaliation claim need not amount to ultimate actions.  Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 67–68 (internal quotation marks and citations omitted).  With respect to the causal connection, "a close temporal relationship between the protected activity and the adverse action is sufficient to show a causal nexus" at the pleading stage.  *Brockman v. Snow*, 217 F. App'x 201, 207 (4th Cir. 2007) (citing *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (citing *Williams*, 871 F.2d at 457)).

Plaintiff has sufficiently alleged the first two elements of a retaliation claim.  She alleges that she repeatedly reported Hoes' conduct to supervisors.  She also alleges that she was placed on a PIP (the PAR program), which the Court will assume for purposes of this motion is an adverse action in the retaliation context.  She also alleges she was subsequently terminated.  Thus, she has alleged engagement in protected activity and that her employer took an adverse employment action against her.

The third element of retaliation—a causal connection between the protected activity and the adverse action—is where plaintiff's claim fails.  According to her complaint, she reported Hoes' conduct to three different supervisors several times, but she does not state when she made those reports in relation to her placement on a PIP or her termination.  She was placed on a PIP in January 2017, but she does not specifically allege that she complained to her supervisors about Hoes before then.  Assuming she did report Hoes' discriminatory conduct before she was placed on a PIP, the Court cannot discern from the complaint how many days, weeks, or months lapsed between her reports of discrimination and the decision to place her on a PIP.  Courts have held time frames as narrow as ten weeks did not establish a causal connection between engagement in protected activity and an adverse action.  *See, e.g.*, *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (affirming summary judgment against a plaintiff because, in part, ten weeks between the protected activity and the adverse action negated the existence of a causal nexus between the two).

As for her termination, the allegations are even murkier.  The Court assumes for purposes of the pending motion that plaintiff was terminated in November 2017, when she says the discrimination ended.  But she does not describe the events preceding or giving rise to her termination.  Even when the complaint is read carefully, the Court cannot divine what occurred between the end of the PAR program in Summer 2017 and her termination in November 2017.  The Court can only speculate when, in relation to her termination, she reported Hoes' conduct to superiors.  Thus, even accepting her allegations as true, the Court finds plaintiff has not alleged "a close temporal relationship" between her protected activity and an adverse action that could establish a causal nexus between them.  Nor has she alleged any other connection between her

protected activity and an adverse action.  Plaintiff therefore has insufficiently alleged a retaliation claim, and her retaliation claim is dismissed.

    F.   Dismissal With Prejudice

The Court granted plaintiff two opportunities to amend her complaint in response to the deficiencies the defendant identified in its November 30, 2020 letter to the Court.  *See* ECF 9 & 13.  She did not amend.  The defendant moved to dismiss on the grounds identified in its letter. Because plaintiff has "has had the opportunity to amend in response to [defendant's] identification of pleading deficiencies but still fails to state a claim," the Court finds "dismissal with prejudice is appropriate because another opportunity to amend would be futile."  *Woods v. Wash. Metro. Area Transit Auth.*, No. PWG-18-3494, 2019 WL 3766508, at *7 (D. Md. Aug. 9, 2019) (citing *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013)), *aff'd sub nom. Woods v. Wash. Metro. Transit Auth.*, 785 F. App'x 188 (4th Cir. 2019); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits," but "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] *futility of amendment*" are reasons to deny opportunity to amend (emphasis added)).  Therefore, plaintiff's complaint is dismissed with prejudice.

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is this 6th day of December 2021 hereby ORDERED:

(1) Defendant's motion to dismiss, ECF 15, is GRANTED;

(2) Plaintiff's complaint, ECF 1, is DISMISSED with prejudice; and

(3) The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to the plaintiff and close this case.

Deborah L. Boardman
United States District Judge